Ewing, C. J.
Upon tlio trial of this cause, certain evidence, without which the plaintiff could not show title to the premises he claimed having been overruled, a non-suit was ordered. lie now seeks a new trial because, as he alleges, the evidence offered was competent and should have been received.
Both parties claimed the premises in question under the will of William T. Oubberly, deceased, the husband of the one and the father of the other. The dispute grew out of the proper location of a lot of land devised to the defendant.
The beginning corner was the first object of research. It was described as “in Joseph Wall’s line at the corner between him and B. Chambers.” There were two corners not far from each other, answering .this description. On this head there was little dispute as the defendant said the plaintiff might begin at either. But the plaintiff was permitted to prove, and did prove by the scrivener who drew tlio will, at which corner the testator intended to commence. He was farther permitted to prove which of the two directions following the courses round the farm the testator intended to run; but in this particular no evidence was introduced.
The next inquiry was whither the description wont, starting *froin tlio beginning corner as already ascertained. The will reads thus : “ A lot of land beginning in Joseph Wall's lino, at the corner between him and B. Chambers, thence as the line runs till it comes to the middle of the road leading from Vauderveer’s tavern to Esq. James’, thence down said road to Joseph Wall’s land, all the land to the oast of said road that I own in said tract to Joseph Wall’s.”
The testator owned a large tract of land of about eight hundred acres lying together. The road above mentioned, from Vanderveer to James, passed through it. At the east end of the road, where it left the testator, was land of Joseph Wall, and at the west end was land of Joseph Tin *356 dall, and southeasterly of the road lay about one hundred and twenty-five acres, comprehending as well what is admitted to have been devised to the defendant as also the part in controversy. From the beginning corner, starting westwardly and running to the road, are five courses or lines, first, two between the testator and Wall, and then three between the testator and Tindall. Starting eastwardly and running to the road, are three courses or lines, first, two between the testator and R. Chambers, and then one between the testator and the same Joseph Wall. At the place of beginning, a line dividing lands of Wall and Chambers, terminated and formed a corner to Wall, but formed no corner to Chambers, as a short line on the same course parted the land of the testator and Chambers. The purpose then already stated recurs, to follow the description starting from the beginning corner. The plaintiff says the term “the line” means the line of Joseph Wall, which divides between him and Chambers and terminates at the beginning point as already mentioned; and that “as” means “ in the same course or direction ;” not coincidence, but similarity; and according to his construction of the will, he is to run from the beginning corner in the same direction as the Wall and Chambers line for a short distance on a line between the testator and Chambers, and then in the same direction leaving the last mentioned line and running where no antecedent line is or has been, across the tract to the road, or, in other words to run on the Wall and Chambers line extended from the beginning across the tract to the road. The defendant says, according to the true construction of the will, “ the line ” *nieans the line of the testator’s land ; that “ as the line runs ” means “ on the line,” without liberty to depart from it; that “ as the line runs ” is not confined to one course, but may comprehend several; and that truly to locate this devise is to start from the beginning corner and to follow the lines of the testator’s land, first between him *357 and Wall, and then between him and Tindall, until the middle of the road is reached. The plaintiff says here is an ambiguity; not an ambiguity on the face or words of the will, but a latent ambiguity; an ambiguity resulting from extraneous circumstances, which, therefore, by rules of evidence, he is permitted to explain by parol testimony, and he offers tho scrivener, who drew the will, to testify that by “ the line ” in the devise, the testator intended the line between Wall and Chambers; that the testator, at the time of making the will, in his instructions to the scrivener, designated the spot where the line he intended would strike the road; and that while giving his instructions to the scrivener he said he meant to exclude the wood land from the devise to his wife, which would be done by running as the plaintiff clamed. The judge, believing the question to turn on the construction of the will, overruled the testimony under the aspect m which it was offered, to remove a latent ambiguity.
Is there then such an ambiguity ? Are the words of the will clear and explicit, and does the difficulty grow out of the proof of extraneous facts ? Does the ambiguity “ lie hidden in the person, or thing, or subject, whereof the will speaks '?” I think those questions must be answered in the negative. There is simply a question of construction, to ascertain the meaning of the testator in the language he has employed. All which should be done from the will itself, ex viscerilus testamenti; as well from the particular clause, or devise, as from every other part of the will whence any light can be drawn. As soon as the construction of the will is settled, all difficulty in locating tho premises is ended. The moaning of the words, “ the line,” is a matter of construction. So, oí the word “as.” So whether the words “ as the line runs ” requires an adherence to a line, or admits a departure, and to run where there is not, and has not been, a line. If, then, the parol evidence would contradict or vary the just construction of the will, as drawn from its * terms, it is manifestly inadmissible, as tending *358 to produce an effect not permitted to be wrought by parol. If it corresponds with that construction it is inadmissible, because it is of no use value.
It remains to inquire whether this construction of the will in the mode adopted for the location of the devise, is consistent with other parts of the description and other clauses' of the will. After arriving at the middle of the road, the description proceeds down said road to Joseph Wall’s land. The most natural construction of these words is, that the boundary from the place where it strikes the road, runs on, or along the road, until it reaches Wall’s land. And according to the location of the defendant it does so, but by the plaintiff’s location it must run three courses or lines from the road along lands of Joseph Tindall before it touches the land of Joseph Wall. The remaining clause of the description is, “ all the land to the east of the said road that I own in said tract to Joseph'Wall’s.” The premises in dispute are as fairly said to be to the east of the road as the part admitted to be contained in the devise. The tract there mentioned is construed by the plaintiff to mean the one hundred and twenty-five acres parted from the rest of the testator’s land by the road, and as the devise to the defendant is of .a lot, it is said, he must have thereby meant a part of it only, and not the whole as is contained in the defendant’s construction. But by the term tract is most probably meant the whole lands of the testator lying in one tract, or body, or the term may be used in the same signification with the word lot, as if it had been all the land to the east of the road that I own in said lot. .In the devise to David Oubberly, where the testator did not intend to follow an actual line, but to form a new one running in the same course with another line, he uses the expression, “ thence running the same course of James Oubberly’s line until it strikes Daniel Hutchinson’s line,” and does not say, running as James Oubberly’s line runs. So in the devise to Elijah, “ thence the same course as the road till it strikes the lane,” and not “ thence as the road runs ” until it strikes the lane.
*359 It was farther said by the plaintiffs counsel that when the testator intended to run on a line, as he did in divers instances, *he has always said down the lino or road, or along the line or road. In these instances, however, it will be found that the testator meant to express, or describe, a single line, and he may, therefore, have very aptly and properly adopted a different phrase, “ as the line runs,” when he intended a description comprehending several courses.
Upon the whole, I am of opinion that the construction and mode of location, adopted by the judge, is conformable to the intention of the testator, and the just import of the language he has employed, and that the parol evidence was rightly rejected.
Ford, J. Elizabeth Cubberly, the devisee of part of her late husband’s real estate, is alleged to have taken more of his lands into possession, than the terms of the devise to her, will comprehend. The language of the will is as follows: “Beginning in Joseph Wall’s line at the corner between him and E. Chambers; thence as the line runs till it comes to the middle of the road leading from Vanderveer’s tavern to Esq. James’; thence down said road to Joseph Wall’s land; ail the land to the east of said road, that I own in said tract, to Joseph Wall’s.
The dispute first occurring in this case, touches the beginning corner mentioned by the testator, which though described with apparent certainty in the will, is rendered ambiguous by means of an extrinsic fact, which is produced and brought to light by parol evidence, that there are two corners in Joseph Wall’s line, between him and E. Chambers, ansAvering so exactly to the description in the will, that no construction upon the instrument itself can shew Avhich one of the two the testator intended. The law denominates this a latent or hidden ambiguity, not apparent upon reading the Avords; but being disclosed and br’ouglit *360 to light by parol evidence, the same kind of evidence may be used to explain it, agreeably to an established principle of law, that what arises by parol may be explained by the same. The scrivener, who drew the testator’s will, was, therefore, permitted by the judge to testify that the testator, in giving him his instructions, described that corner of the two which is at the greatest distance from the road; and this evidence, not being contradicted by any other proof, established that as the beginning corner.
*Another part of the foregoing clause gives rise to a further dispute. The testator says, “ thence’ as the line runs till it comes to the middle of the road;” and the dispute is about what line he intended. The plaintiff insists that Wall’s line, just before mentioned by him, is the one he intended. But that line does not extend to the road mentioned ;. it stops eighteen chains short of it, and then turns off in another direction; therefore, the devisee insists that by “ the line,” was meant the line of the testator’s farm till it comes to the road. In order to settle this dispute, the plaintiff offered to prove again, by the scrivener, that the testator specified Wall’s line from the corner to the road; but the judge perceived no latent ambiguity to authorize parol evidence of what the testator said, and, therefore, he rejected it entirely. In doing so, he was certainly right. A latent ambiguity arises when two things or persons, both answering exactly to the thing or person described in the will, such as the two corners in Wall’s line, between him and Chambers, happen to exist; and then parol evidence of what the testator said may be lawfully adduced to show which of the two lie intended; but it cannot, in any case, be allowed to show that he meant a thing different from that described in the will; for this would be to vary the will itself. Now the line of Wall and Chambers does not run till it comes to the road ; nor agree to the description in the will. There being but one line that runs till it comes to the road there is no ambiguity at all in the case. Parol evi *361 dence would contradict the words of tho testator by showing that he meant a line which does not come to the road, when the words specify one that does come to it.
But the will does not call, it is said, for a line running to the road ; the words being “ thence as the line runs and an extension of it in that course to the road, will be as it runs, the word (as) meaning likeness, like as or in like manner as it runs. This construction would be a plausible one, if it did not omit some essential words. The omitted words are “ till it comes.” The word it means line. There is no other antecedent. The grammatical, and only possible, sense is this, thence as the line runs till it (the line) comes to the road. It speaks most evidently of a line, and tells as evidently where it comes to. If it is not the line, what is it that comes ? To keep the course of that line *till the extension of it comes to the road, is neither the language nor the meaning of tho will.
But furthermore, by following an extension of Wall’s line, until the surveyor comes to the road, if he then run along it to Wall's land as the will directs, it will give the disputed premises to the widow; and there is no way to avoid this evident result, but to let him run in an opposite direction along tho road, until he comes to Tindall’s land, in defiance of the testator’s directions.
Moreover, after giving the particular bounds of a tract for the widow, the testator gives a general description of it in these words — “ all tho land to the east of said road, that 1 own in said tract, to Joseph Wall’s ” whereby he fixes her eastern boundary on Joseph Wall’s land. Yet the plaintiff proposes to stop the line of her tract nearly thirty chains before it reaches to Wall’s land, though the will declares that her eastern boundary. These reasons make it abundantly evident, that neither Wall’s line nor an extension of it in the samo coarse could have been intended by the testator. On the other hand, there is but one line answering the description in the will, and that is the line of the farm, of *362 •which the tract is a portion. This runs from the beginning corner, this comes to the middle of the road, this runs down the same to Wall’s land for an eastern boundary; this creates no ambiguity, nor occasions a resort to parol evidence.— There are indeed five courses in the line of the farm, after it leaves the said beginning corner, before it comes to the middle of the road; so that the word lines might have been used by the scrivener, with as much propriety as line. But though the expression be a loose one, it is often used in common parlance. A crooked line is a line just as much as a straight one. We say the line of a state, a county, a coast, or of the sea shore, though it have a great many bendings and inflections; and with equal propriety the line of a fence, a road, or a farm ; so when a testator, intending to-devise part of his farm, begins at one of the corners of it and says, “ thence as the line runs,” we understand by it the line of the farm, whether it be straight or crooked; and on the whole I am of opinion that the plaintiff’s rule must be discharged.
Drake, J., concurred.
Rule to shew cause for a new trial discharged.